UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



UNITED STATES DISTRICT COURT
FILED
FEB 2 8 2020
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

———————————————————

ELMER AUGUSTO RODRIGUEZ-
FIGUEROA,

     Petitioner,

  v.

WILLIAM P. BARR, Attorney General,
et al.,

     Respondents.

———————————————————

**DECISION AND ORDER**

6:19-CV-06366 EAW

## <u>INTRODUCTION</u>

Petitioner Elmer Augusto Rodriguez-Figueroa ("Petitioner"), a civil immigration detainee currently held at the Buffalo Federal Detention Facility in Batavia, New York, seeks a *writ of habeas corpus* pursuant to 28 U.S.C. § 2241. (Dkt. 1). Petitioner contends that he is detained pursuant to 8 U.S.C. § 1226(a), and that he is entitled to release, or in the alternative, a bond hearing. (*Id.* at 2). For the reasons that follow, the Court finds that Petitioner is detained pursuant to 8 U.S.C. § 1225(b) but nonetheless, while not entitled to immediate release, Petitioner is entitled to an individualized bond hearing at which the Government bears the burden of proving by clear and convincing evidence that he poses either a risk of flight or a danger to the community.

# BACKGROUND

## I.  Factual Background

Petitioner is a native and citizen of Honduras. (Dkt. 8-1 at ¶ 5). He illegally entered the United States on June 9, 2018, with four other individuals, and he was in the United Stated within 0.75 miles of the United States border with Mexico when he was apprehended by Customs and Border Patrol ("CBP") agents in the early morning hours of June 10, 2018. (*Id.*). Petitioner admitted to knowingly crossing the border without proper immigration documents (*id.* at ¶¶ 6-7), but he claimed a fear of torture or persecution if returned to Honduras (*id.* at ¶ 8). An asylum officer determined that the fear was not credible (*id.*), and Petitioner was ordered removed from the United States under 8 U.S.C. § 1225(b)(1) (Dkt. 8-2 at 5).

Petitioner was referred to an immigration judge ("IJ") for review of the asylum officer's determination. (Dkt. 8-1 at ¶ 8). On August 21, 2018, the Department of Homeland Security ("DHS") notified Petitioner that it had performed a custody determination pursuant to 8 U.S.C. § 1226 and would continue his detention pending a final administrative outcome in his immigration proceedings. (*Id.* at ¶ 9; Dkt. 8-2 at 11). On September 11, 2018, Petitioner appeared before an IJ for a hearing on the asylum officer's determination, which was rescheduled for September 25, 2018, to allow Petitioner's attorney to appear. (Dkt. 8-1 at ¶ 10). The hearing was again adjourned to allow Petitioner to consult with his attorney, and was scheduled for October 11, 2018, at the Buffalo Federal Detention Facility where Petitioner was transferred on October 4, 2018. (*Id.* at ¶¶ 11-12). Petitioner's hearing was further adjourned at his attorney's request and

held on November 1, 2018. (*Id.* at ¶¶ 13-14). At the hearing, the IJ found Petitioner failed to establish a credible fear of persecution, but on November 2, 2018, the IJ issued an amended order finding that Petitioner met the criteria for a credible fear of persecution and vacating the decision of the asylum officer. (*Id.* at ¶¶ 14-15).

After the credible fear finding, Petitioner was transferred from expedited removal proceedings to formal removal proceedings pursuant to 8 U.S.C. § 1225(b)(1)(a)(iii). (*Id.* at ¶ 16). He was served with a Notice to Appear dated November 13, 2018, which set a removal hearing date for January 31, 2019. (*Id.*). On November 15, 2018, Petitioner was informed that DHS had performed another custody determination pursuant to § 1226 and decided to continue his detention pending a final administrative determination in his formal removal proceedings. (*Id.* at ¶ 17; Dkt. 8-2 at 18). He requested that an IJ review the detention determination. (Dkt. 8-1 at ¶ 17).

On December 18, 2018, Petitioner appeared before the IJ and requested a continuance. (*Id.* at ¶ 18). The removal hearing and custody redetermination hearing were both rescheduled for January 8, 2019. (*Id.*). At the hearing on January 8, 2019, Petitioner informed the IJ that he planned to file a Form I-589 Application for Asylum and Withholding of Removal. (*Id.* at ¶ 19). The custody redetermination hearing was rescheduled for February 28, 2019, and the removal hearing was rescheduled for April 10, 2019. (*Id.*).

Petitioner withdrew his request for a change in custody status and bond on February 28, 2019. (*Id.* at ¶ 21). After his removal hearing was rescheduled for June 24, 2019, he was ordered removed to Honduras, and his applications for relief from withholding and for

asylum were denied. (*Id.* at ¶ 23). Petitioner appealed the removal order to the BIA on July 11, 2019. (*Id.* at ¶ 24). On December 5, 2019, the BIA denied Petitioner's appeal, and Petitioner filed a petition for review before the Second Circuit on December 19, 2019. (Dkt. 16-1 at 1). On December 30, 2019, the Second Circuit issued a temporary stay of removal. (*Id.* at 3). Petitioner had a bond hearing before an IJ on January 17, 2020. (Dkt. 17-1). The IJ found that she did not have jurisdiction because the BIA affirmed the order of removal making it administratively final, and alternatively finding that bond was inappropriate because Petitioner presents a risk of flight. (*Id.* at 2).

## II.    **Procedural Background**

Petitioner filed his Petition *pro se* on May 15, 2019. (Dkt. 1). Respondents timely filed their answer and opposition to the Petition on August 12, 2019 (Dkt. 5; Dkt. 8; Dkt. 9), and Petitioner's reply was filed on August 21, 2019 (Dkt. 10). Counsel appeared on Petitioner's behalf on September 30, 2019. (Dkt. 11). Oral argument was held before the undersigned on December 18, 2019, and decision was reserved. (Dkt. 15). Petitioner submitted status updates regarding his petition for review and bond hearing respectively on January 5, 2020 (Dkt. 16) and February 6, 2020 (Dkt. 17).

## **DISCUSSION**

## I.    **Jurisdiction**

The federal habeas corpus statute gives district courts jurisdiction to hear immigration-related detention cases. *See* 28 U.S.C. § 2241(c)(3); *Demore v. Kim*, 538 U.S. 510, 517-18 (2003) (holding federal courts have jurisdiction to review challenges to pre-removal detention); *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) (holding "§ 2241 habeas

corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention" in immigration cases). District courts do not have jurisdiction over challenges to the legality of final orders of deportation, exclusion, and removal; jurisdiction to review such challenges rests exclusively in circuit courts. *See Gittens v. Menifee*, 428 F.3d 382, 384 (2d Cir. 2005) ("[The REAL ID Act, 119 Stat. 231, § 106(a) (May 11, 2005)] eliminates habeas jurisdiction over final orders of deportation, exclusion, and removal, providing instead for petitions of review . . . which circuit courts alone can consider.").

## II.   Detainment Under § 1225(b) or § 1226(a)

Petitioner argues that the Government is detaining him pursuant to § 1226(a), and as a result he is entitled to a bond hearing wherein the Government bears the burden of proving by clear and convincing evidence that Petitioner should be detained. The Government argues Petitioner was and continues to be detained pursuant to § 1225(b). For the following reasons, the Court finds Petitioner is detained pursuant to § 1225(b).

### A.   Proper Detention Under § 1225(b)

"Section 1225 applies to two types of aliens: 'arriving aliens' and 'certain other aliens.'" *Dorval v. Barr*, No. 6:19-CV-06545-MAT, 2019 WL 5079566, at *3 (W.D.N.Y. Oct. 10, 2019); *see* 8 U.S.C. § 1225(b) ("Inspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled."). Regulations define an arriving alien as:

> [A]n applicant for admission coming or attempting to come into the United States at a port-of-entry, or an alien seeking transit through the United States at a port-of-entry, or an alien interdicted in international or United States

waters and brought into the United States by any means, whether or not to a designated port-of-entry, and regardless of the means of transport.

8 C.F.R. § 1001.1(q). Pursuant to § 1225, "arriving aliens" are subject to expedited removal proceedings "without further hearing or review unless the alien indicates either an intention to apply for asylum . . . or a fear of persecution." 8 U.S.C. § 1225(b)(1)(A)(i). If the "arriving alien" does so indicate, "the officer shall refer the alien for an interview by an asylum officer." *Id.* § 1225(b)(1)(A)(ii).

With regards to "certain other aliens," § 1225(b)(1)(A)(iii), titled "Application to certain other aliens," states:

> (I) In general
> The Attorney General may apply clauses (i) and (ii) of this subparagraph to any or all aliens described in subclause (II) as designated by the Attorney General. Such designation shall be in the sole and unreviewable discretion of the Attorney General and may be modified at any time.
>
> (II) Aliens described
> An alien described in this clause is an alien . . . who has not been admitted or paroled into the United States, and who has not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility under this subparagraph.

When the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135, was passed, the Attorney General's authority under § 1225(b)(1)(A)(iii)(I) was delegated to the Secretary of DHS. In 2004, DHS used this authority to designate as "certain other aliens" the following:

> Aliens determined to be inadmissible under sections 212(a)(6)(C) or (7) of the Immigration and Nationality Act who are present in the U.S. without having been admitted or paroled following inspection by an immigration officer at a designated port-of-entry, who are encountered by an immigration

officer within 100 air miles of the U.S. international land border, and who have not established to the satisfaction of an immigration officer that they have been physically present in the U.S. continuously for the fourteen-day (14-day) period immediately prior to the date of encounter.

Designating Aliens for Expedited Removal, 69 Fed. Reg. 48877-01, 48879 (Aug. 11, 2004) (hereinafter "Certain Other Aliens Rule"). In other words, aliens who illegally entered the United States and are detained within 14 days of entry and within 100 miles of the border are treated the same as "arriving aliens" under the current statutory and regulatory scheme.

If an immigration officer determines during an interview that either an "arriving alien" or "certain other alien" has a credible fear of persecution, "the alien shall be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii); *see* Certain Other Aliens Rule, 69 Fed. Reg. at 48879 ("All aliens placed into expedited removal as a result of this designation will have the same rights to a credible fear screening by an asylum officer[.]"). This detention places aliens in full removal proceedings pursuant to 8 U.S.C. § 1229a. 8 U.S.C. § 1225(b)(2)(A). If the asylum officer finds the alien does not have a credible fear, the alien can request review of that determination by an IJ. 8 C.F.R. § 1208.30(g). Additionally, "[a]liens detained pursuant to Section 1225(b) may be awarded discretionary parole into the country by the Attorney General, pending their application to be admitted or for asylum." *Dorval*, 2019 WL 5079566, at \*5; *see* 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 212.5(a) & (b)(5).

In contrast, "[s]ection 1226 generally governs the process of arresting and detaining [aliens present in the country] pending their removal." *Jennings v. Rodriguez*, 138 S. Ct.

830, 837 (2018). Additionally, under § 1226(a) the Attorney General "may release the alien" detained pursuant to § 1226 either on bond or under conditional parole.

Given the statutory framework described above, the Court concludes that Petitioner is an "other alien" detained pursuant to § 1225(b) as opposed to an alien detained pursuant to § 1226(a). Petitioner was detained within 100 miles of the border and within 14 days of his entry into the United States.[1] (Dkt. 8-1 at ¶¶ 6-7). Additionally, the IJ found Petitioner established a credible fear of persecution, and Petitioner was subsequently detained. (*Id.* at ¶¶ 14-15). Petitioner argues that because he had already made it past the country's borders when he was arrested, he should have been detained pursuant to § 1226(a). (Dkt. 13 at 4). However, Petitioner relies solely on the language of § 1226(a) and does not address the language of § 1225(b) and its associated regulations, including the Certain Other Aliens Rule. *See Singh v. Barr*, No. 19-CV-1208, 2019 WL 6609312, at *2 (W.D.N.Y. Dec. 3, 2019) (holding alien "apprehended at the United States-Mexico border within a day of his illegal entry" was detained under § 1225). Accordingly, the Court finds Petitioner is detained under § 1225(b).

### B. Estoppel

Petitioner also argues that even if it was proper for him to be detained under § 1225(b), the Government should be estopped from taking that position because it treated him as detained pursuant to § 1226(a). "[I]t is well settled that the Government may not

---

[1]    Petitioner contends it is unclear when and where he was detained. However, the record submitted by Respondents demonstrates that he was apprehended under conditions that comport with the Certain Other Aliens Rule. (*See* Dkt. 8-1 at ¶¶ 5-7).

be estopped on the same terms as any other litigant." *Heckler v. Cmty. Health Servs. of Crawford Cty., Inc.*, 467 U.S. 51, 60 (1984). "While this circuit has occasionally found the Government to be estopped," it has done so "only in very limited and unusual circumstances," *United States v. Boccanfuso*, 882 F.2d 666, 670 (2d Cir. 1989), and courts must apply the doctrine of equitable estoppel to the Government "with the utmost caution and restraint," *Estate of Carberry v. Comm'r of Internal Revenue*, 933 F.2d 1124, 1127 (2d Cir. 1991) (quotation omitted). "The Federal Government can be estopped only upon a showing that it made a misrepresentation upon which the other party reasonably and detrimentally relied and that there was affirmative misconduct on the part of the government." *Landau's, Inc. v. United States*, No. CV 90-0092 ADS, 1990 WL 68904, at *2 (E.D.N.Y. May 15, 1990); *see Heckler*, 467 U.S. at 59 ("[T]he party claiming the estoppel must have relied on its adversary's conduct 'in such a manner as to change his position for the worse' and that reliance must have been reasonable in that the party claiming the estoppel did not know nor should it have known that its adversary's conduct was misleading." (footnotes omitted)); *Drozd v. I.N.S.*, 155 F.3d 81, 90 (2d Cir. 1998) ("[The petitioner]'s claim falls short of the 'affirmative misconduct' that is a prerequisite to estoppel."). "[N]egligent conduct is an insufficient basis for an estoppel claim against the government." *Ahmed v. Holder*, 624 F.3d 150, 155 (2d Cir. 2010) (citing *INS v. Miranda*, 459 U.S. 14, 18 (1982)).[2]

---

[2] During oral argument, Petitioner's counsel cited to *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117 (2016), to support his argument that he can support an estoppel claim against the Government based on negligence. *Encino Motorcars* does not address

The record before the Court demonstrates that Petitioner was, at least initially, detained under § 1225(b). A Determination of Inadmissibility as to Petitioner dated June 18, 2018, states: "[p]ursuant to [8 U.S.C. § 1225(b)(1)], the Department of Homeland Security has determined that you are inadmissible to the United States[.]" (Dkt. 8-2 at 5). The record further shows that even if the Government did at some point detain Petitioner under § 1226(a) as opposed to § 1225(b), the Government's conduct does not rise above mere negligence. Petitioner only points to documents stating that he was given a bond hearing pursuant to § 1226(a); he does not cite to any evidence that demonstrates Respondents intended to detain him under § 1226(a) in an effort to deprive him of any rights he was entitled to under § 1225(b). *See Abdi v. Duke*, 280 F. Supp. 3d 373 (W.D.N.Y. 2017) (implementing preliminary injunction wherein subclass of arriving asylum-seekers who have passed a credible fear interview and who are or will be detained at the Buffalo Federal Detention Facility in Batavia, New York, who have not been granted parole and who have been detained for six months or more, were entitled to an individualized bond hearing where government bore the burden of proving by clear and convincing evidence that an individual is a flight risk or a danger to the community), *vacated in relevant part by Abdi v. McAleenan*, 405 F. Supp. 3d 467 (W.D.N.Y. 2019).

Additionally, at oral argument, counsel for the Government provided reasonable explanations for the use of the forms Petitioner points to as evidence of § 1226(a) detention. The Notice to Appear, a form document prepared by DHS, marks Petitioner as "an alien

estoppel, but instead discusses whether the government's action was arbitrary and capricious. *See id.* at 2125-27.

present in the United States who has not been admitted or paroled" as opposed to "an arriving alien." (Dkt. 8-2 at 16). Because Petitioner was detained after crossing the U.S. border, he is not an "arriving alien" pursuant to 8 U.S.C. § 1225(b)(1)(A)(i).[3] Instead, he has been designated by DHS as a "certain other alien" pursuant to 8 U.S.C. § 1225(b)(1)(A)(iii). Accordingly, it would not have been appropriate to check the "arriving alien" box on Petitioner's form. The more accurate description of Petitioner's status as a "certain other alien" is the box that was checked, "an alien present in the United States who has not been admitted or paroled." While this box also applies to aliens detained pursuant to § 1226(a), lack of clarity on a form does not amount to more than negligent conduct by the Government.

Moreover, the Notice of Custody Determination prepared for Petitioner is also a form. At oral argument, Respondents' counsel argued that because the only statutory provision that provides for bond hearings in the immigration detention context is § 1226, and because the law is not currently settled as to whether immigrants detained under § 1225(b) are entitled to a bond hearing under the Constitution, the form notice states that the administrative determination is made "[p]ursuant to the authority contained in [§ 1226]." (Dkt. 8-2 at 18). Again, the Court finds that an inartfully drafted form, even one that generates confusion, does not rise to anything more than negligence and, thus, is insufficient to estop the Government.

---

[3]     The Government also contends that because this Court's injunction in *Abdi*, 280 F. Supp. 3d 373, applies to "arriving asylum-seekers," it does not apply to Petitioner as a "certain other alien."

For the reasons set forth above, the Court finds that Petitioner was at all relevant times detained pursuant to § 1225(b). The Court must next address what due process rights, if any, Petitioner is entitled to as a "certain other alien" detained pursuant to that provision.

## III. Due Process

Petitioner argues that even if he is detained under § 1225(b), he is entitled to a bond hearing where the Government bears the burden of proving by clear and convincing evidence that he poses a risk of flight or a danger to the community. Respondents contend that Petitioner has not exhausted his administrative remedies, and that Petitioner's mandatory detention pursuant to § 1225(b) is lawful in any event. The Court finds due process entitles Petitioner to a bond hearing where the Government bears the burden of proof.

### A. Exhaustion

"There is no statutory requirement of administrative exhaustion before immigration detention may be challenged in federal court by a writ of habeas corpus; however, such exhaustion is generally required as a prudential matter." *Paz Nativi v. Shanahan*, No. 16-CV-8496 (JPO), 2017 WL 281751, at *1-2 (S.D.N.Y. Jan. 23, 2017) (collecting cases). "Exhaustion of administrative remedies may not be required when: (1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question." *Guitard v. U.S. Sec'y of Navy*, 967 F.2d 737, 740 (2d Cir. 1992) (citing *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50-51 (1938)); *see Compunnel Software Grp., Inc. v.*

*Gupta*, No. 14 Civ. 4790(SAS), 2015 WL 1224298, at \*4 (S.D.N.Y. Mar. 17, 2015) ("The exhaustion doctrine, however, is also subject to numerous exceptions.").

The Government argues that the Court should not entertain Petitioner's due process arguments because Petitioner did not seek discretionary parole or appeal the IJ's bond decision to the BIA. The Court declines to dismiss the Petition on exhaustion grounds for the reasons that follow.

### 1. Discretionary Parole

The Government contends that Petitioner failed to exhaust his administrative remedies because he did not request discretionary parole. (Dkt. 9 at 16). The Court does not find Petitioner's failure to request a parole determination before filing his Petition to be dispositive.

"The only statutory mechanism for release from § 1225(b) custody is found in 8 U.S.C. § 1182(d)(5)(A)," *Perez v. Decker*, No. 18-CV-5279 (VEC), 2018 WL 3991497, at \*2 (S.D.N.Y. Aug. 20, 2018). Under that provision, an individual detained under § 1225(b) can be paroled "into the United States temporarily" by the Secretary of DHS "in his discretion." 8 U.S.C. § 1182(d)(5)(A); *see* Certain Other Aliens Rule, 69 Fed. Reg. at 48879.

The Court finds that requiring Petitioner to request parole before considering his Petition would be futile. Petitioner already had a bond hearing where a neutral decision-maker found he was not eligible to be released on bond. If Petitioner was found to be ineligible for bond under those proceedings, then he would almost certainly not be released under the more discretionary statutory parole standard. *See Clerveaux v. Searls*, 397 F.

- 13 -

Supp. 3d 299, 314 (W.D.N.Y. 2019) (discussing that 8 C.F.R. § 212.5, the regulation governing parole proceedings, "places extraordinarily broad discretion over whether to release a detainee in the hands of DHS officials without requiring any sort of rigorous review"). Moreover, Petitioner could not make the constitutional challenges he brings in the instant matter in a parole proceeding. *See Gutierrez Cupido v. Barr*, No. 19-CV-6367-FPG, 2019 WL 4861018, at *2 (W.D.N.Y. Oct. 2, 2019) (holding exhaustion was not required because a parole proceeding "is not a forum in which an alien may press constitutional challenges to immigration statutes and regulations"), *appeal filed*, No. 19-3994 (2d Cir. Dec. 2, 2019). Accordingly, the Court will not require Petitioner to request a parole determination before considering his Petition.

### 2. Appeal to BIA

The Government also argues that Petitioner's failure to exhaust his administrative remedies is fatal to his Petition. For the following reasons, the Court finds requiring Petitioner to appeal his bond decision to the BIA is not necessary for consideration of Petitioner's due process claim.

At the time of the briefing on this Petition, Petitioner had not yet had a bond hearing before an IJ, and Respondents argued Petitioner's failure to request a bond hearing should result in denial of his Petition on exhaustion grounds. (Dkt. 9 at 16-19). However, Petitioner has since requested and had a bond hearing before an IJ, and the IJ found that she did not have jurisdiction to make a bond determination because the BIA had affirmed the IJ's order of removal, and alternatively found that even if she did have jurisdiction, bond was inappropriate because Petitioner presents a risk of flight. (Dkt. 17-1 at 2).

Because Petitioner requested a bond hearing, and because the IJ made a determination on the merits with regards to Petitioner's entitlement to bond, Respondents' argument is moot.[4]

Additionally, the Court finds requiring Petitioner to appeal the IJ's bond decision to the BIA would not properly address the claims in the Petition because Petitioner raises substantial constitutional questions regarding the burden of proof that due process requires at a bond hearing. *See Velasco Lopez v. Decker*, No. 19-CV-2912 (ALC), 2019 WL 2655806, at *3 (S.D.N.Y. May 15, 2019) ("[T]he BIA has no authority [to] address issues pertaining to the Constitution."), *appeal filed*, No. 19-2284 (2d Cir. July 23, 2019); *Joseph v. Decker*, No. 18-CV-2640(RA), 2018 WL 6075067, at *6 (S.D.N.Y. Nov. 21, 2018) ("[E]xhaustion is excused here because any administrative appeal would have been futile and unable to address [the petitioner]'s substantial constitutional claims. The two remedies Petitioner seeks in the alternative from this Court—immediate release without another

---

[4]     The IJ has jurisdiction over Petitioner's bond hearing as long as the stay of his order of removal remains in place. Section 1231 of the INA addresses detention of "immigrants in the 'removal period,' the term used in the statute to describe the 90-day period following an order of removal during which 'the Attorney General shall remove the alien.'" *Id.* (quoting 8 U.S.C. § 1231(a)(1)(A)). The removal period begins "on the latest of the following": (1) "[t]he date the order of removal becomes administratively final"; (2) *"[i]f the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order"*; and (3) "[i]f the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement." 8 U.S.C. § 1231(a)(1)(B) (emphasis added). Because the Second Circuit has issued a stay of Petitioner's removal order, Petitioner is not in the removal period and is currently detained pursuant to § 1225(b), not § 1231. Accordingly, the IJ and BIA have jurisdiction to consider his bond request. *See Wang v. Ashcroft*, 320 F.3d 130, 147 (2d Cir. 2003) ("[W]here a court issues a stay pending its review of an administrative removal order, the alien continues to be detained under [the provision the alien was previously detained under] until the court renders its decision.").

- 15 -

bond hearing or a supplemental bond hearing with the burden of proof on the Government—are foreclosed at the BIA based on existing administrative precedent."), *appeal withdrawn*, No. 19-245, 2019 WL 3334802 (2d Cir. May 1, 2019).

The record further shows that the only viable arguments that Petitioner could make to the BIA regarding the IJ's merits ruling are constitutional ones. The IJ's decision found that Petitioner posed a flight risk. (Dkt. 17-1 at 2). The Petition contains no allegations that could viably refute the IJ's factual findings. Instead, Petitioner argues a clear-and-convincing-evidence burden of proof should be on the Government at the bond hearing and that the IJ should have considered alternatives to detention when assessing Petitioner's risk of flight. (Dkt. 1 at ¶ 45). As is discussed later in this Decision and Order, the Government should have been held to a clear-and-convincing-evidence burden at the bond hearing, and the IJ should have considered alternatives to detention. *See Hechavarria v. Whitaker*, 358 F. Supp. 3d 227, 242 (W.D.N.Y. 2019) ("At the very least, the IJ was required to consider possible alternatives to detention. . . . And at the very least, the IJ was required to determine whether the government's evidence demonstrated that any and all proffered alternatives to detention would not protect the public.").

Existing BIA precedent does not establish that the clear-and-convincing-evidence standard applies for bond hearings held for "certain other" aliens, nor does it establish that alternatives to detention should be considered when making a bond determination. *See Velasco Lopez*, 2019 WL 2655806, at *3 ("Although the Government rests its laurels on the idea that the BIA altering their entire standard is a 'possibility,' the Government fails to cite any case law or give any examples of decisions by the BIA that indicate willingness

or desire to alter their own policy of placing the burden on immigrants to prove, by clear and convincing evidence, that they are neither a danger to the community nor a risk of flight. Thus, this Court deems the issue of the current burden as predetermined."); *Joseph*, 2018 WL 6075067, at *6 ("Where, as here, 'the challenge is to regulations [and precedent that are] promulgated and consistently enforced by the agency, and which the agency has either no power, or no inclination, to correct,' exhaustion is futile and thus does not serve the policies of judicial efficiency or allowing the agency to correct its own errors." (alteration in original) (quoting *Abbey v. Sullivan*, 978 F.2d 37, 45 (2d Cir. 1992))). As a result, the Court finds that requiring Petitioner to appeal to the BIA would not provide Petitioner with a genuine opportunity for adequate relief. *See Hemans v. Searls*, No. 18-CV-1154, 2019 WL 955353, at *10 (W.D.N.Y. Feb. 27, 2019) ("Neither the immigration judge nor the BIA have jurisdiction to adjudicate the constitutionality of that burden. So giving [the petitioner] a 'typical' . . . bond hearing would not remedy the due process violation, and requiring him to seek another hearing before an immigration judge therefore would be futile." (citation omitted)); *Joseph*, 2018 WL 6075067, at *7 ("[T]his Court is convinced that it is the only entity able to address [the petitioner]'s substantial constitutional claims and that any attempt to receive relief from the agency would pointlessly prolong a detention that is already pushing constitutional bounds.").

### B. Process Due to Petitioner

#### 1. Entitlement to Due Process Protections

This Court has previously found that because "certain other" aliens such as Petitioner are aliens that entered the United States, albeit unlawfully, they are entitled to

due process protections. *See Gonzales Garcia v. Barr*, No. 6:19-CV-06327 EAW, 2020 WL 525377, at *8 (W.D.N.Y. Feb. 3, 2020); *see Zadvydas*, 533 U.S. at 682 (holding that "[o]nce an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to *all persons within the United States, including aliens*, whether their presence is lawful, *unlawful, temporary*, or permanent." (emphases added)). Accordingly, the Court must now determine what sort of process is due to Petitioner. *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) ("Due process . . . is a flexible concept that varies with the particular situation.").

## 2. Substantive Due Process

Petitioner alleges that his prolonged detention has resulted in the violation of his right to substantive due process and requests that he be immediately released. The Court denies the Petition on this ground for the reasons that follow.

"[A]liens . . . have a substantive due process right to be free of arbitrary confinement pending deportation proceedings." *Doherty v. Thornburgh*, 943 F.2d 204, 209 (1991). "It is axiomatic, however, that an alien's right to be at liberty during the course of deportation proceedings is circumscribed by considerations of the national interest." *Id.* If the infringement on an alien's "liberty interest results from a proper exercise of discretion," then a prolonged detention "is not conduct that goes beyond the range of government activity permitted by the Constitution." *Id.* at 211. "[D]etention of an alien 'once removal is no longer reasonably foreseeable' . . . violates the Due Process Clause." *Wang v. Ashcroft*, 320 F.3d 130, 146 (2d Cir. 2003). "[O]nce the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable

future, the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701.

In the instant matter, Petitioner has failed to demonstrate that his removal is not reasonably foreseeable. To the contrary, Petitioner would be removed if he withdrew his asylum application. Petitioner "may not rely on the extra time resulting" from his immigration proceedings "to claim that his prolonged detention violates substantive due process." *Doherty*, 943 F.2d at 211. Accordingly, the Court denies the portion of the Petition that rests on substantive due process grounds as well as Petitioner's associated request for immediate release.

### 3. Process Due to Petitioner

"The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quotation omitted). "In determining 'what process is due,' we recognize that 'due process is flexible and calls for such procedural protections as the particular situation demands.'" *Francis v. Fiacco*, 942 F.3d 126, 142-43 (2d Cir. 2019) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).

> [T]his Court applies the three-factor analysis from [*Mathews*] considering (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

*Id.* at 143 (quoting *Mathews*, 424 U.S. at 335).

The main private interest at stake in the instant matter is Petitioner's "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint." *Zadvydas*, 533 U.S. at 690. Additionally, Petitioner has an interest stemming from the IJ's ultimate determination that he has a credible fear of persecution. *See Augustin v. Sava*, 735 F.2d 32, 37 (2d Cir. 1984) ("[I]t appears likely that some due process protection surrounds the determination of whether an alien has sufficiently shown that return to a particular country will jeopardize his life or freedom so as to invoke the mandatory prohibition against his return to that country."); *Yiu Sing Chun v. Sava*, 708 F.2d 869, 877 (2d Cir. 1983) ("[A] refugee who has a 'well-founded fear of persecution' in his homeland has a protectable interest recognized by both treaty and statute, and his interest in not being returned may well enjoy some due process protection not available to an alien claiming only admission." (footnotes omitted)).

As for the Government, it has an interest in detaining aliens "to ensure that the alien will be available if he or she is determined to be deportable." *Doherty*, 943 F.2d at 211. The Government also has an interest "in efficient administration of the immigration laws at the border." *Landon v. Plasencia*, 459 U.S. 21, 34 (1982). Additionally, the Government has an interest in the "fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. "Further, it must weigh heavily in the balance that control over matters of immigration is a sovereign prerogative, largely within the control of the executive and the legislature." *Landon*, 459 U.S. at 34.

The Court now turns to Petitioner's risk of erroneous deprivation and "the probable value, if any, of additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335.

"[T]he key to the constitutionality of a grave deprivation, of course, is that before the Government unilaterally takes away that which is sacred, it must provide *meaningful* process[.]" *Martinez v. McAleenan*, 385 F. Supp. 3d 349, 363 (S.D.N.Y. 2019), *appeal filed*, No. 19-2533 (2d Cir. Aug. 16, 2019); *see Armstrong v. Manzo*, 380 U.S. 545, 552 (1965) ("A fundamental requirement of due process is the opportunity to be heard. It is an opportunity which must be granted at a meaningful time and in a meaningful manner." (quotation and citation omitted)). "[T]he Supreme Court has reiterated that regardless of what provisions and procedures Congress enacts pursuant to its 'plenary power' to create immigration law, that power is always subject to constitutional limitations." *Martinez*, 385 F. Supp. 3d at 364; *see Zadvydas*, 533 U.S. at 695 (citing *INS v. Chadha*, 462 U.S. 919, 941-42 (1983) for the proposition that Congress must choose "a constitutionally permissible means of implementing" that power).

In the instant matter, Petitioner was provided a bond hearing where he bore the burden of proving that he was not a risk of danger to the community or a flight risk. The other process available to Petitioner, as mentioned earlier in this Decision and Order, is the opportunity to apply for discretionary parole pursuant to 8 U.S.C. § 1182(d)(5). The Court finds that the risk of erroneous deprivation of Petitioner's liberty under both of these procedures is high.

The Court follows the logic of the majority of courts in this Circuit and finds that "[b]ecause the grant of parole pursuant to § 1182(d)(5)(A) is 'entirely discretionary,' with discretion vested in the same agency charged with removing inadmissible aliens, 'it provides no actual due process protection'" to Petitioner as a "certain other" alien facing

indefinite detention under § 1225(b). *Bermudez Paiz v. Decker*, No. 18-CV-4759 (GHW) (BCM), 2018 WL 6928794, at *12 n.14 (S.D.N.Y. Dec. 27, 2018) (quoting *Birch v. Decker*, No. 17-CV-6769 (KBF), 2018 WL 794618, at *7 (S.D.N.Y. Feb. 7, 2018)); *see Gonzales Garcia*, 2020 WL 525377, at *10-12.

The Court also finds that the bond hearing already provided to Petitioner imposes a high risk of erroneous deprivation. Courts in this Circuit, including this Court, have overwhelmingly concluded that it is a violation of procedural due process to require an immigration detainee held under § 1226(a) to bear the burden of proof at his bond hearing. *See, e.g., Aparicio-Villatoro v. Barr*, No. 6:19-CV-06294-MAT, 2019 WL 3859013, at *7 (W.D.N.Y. Aug. 16, 2019) ("As to the applicable burden of proof, most courts that have decided the issue have concluded that [the] Government must supply clear and convincing evidence that the alien is a flight risk or danger to society."). Additionally, most courts within this Circuit that have found "arriving" aliens subject to prolonged detention are entitled to a bond hearing have held that the standard for such a bond hearing mirrors that accorded aliens detained under § 1226(a). *See, e.g., Lett v. Decker*, 346 F. Supp. 3d 379, 389 (S.D.N.Y. 2018) ("[T]he Government must prove by clear and convincing evidence that Petitioner's continued detention is justified.").[5] Because Petitioner is a "certain other"

---

[5]    The court in *Clerveaux*, 397 F. Supp. 3d 299, found that the petitioner, who was an "arriving" alien, was entitled to a rigorous custody review but not necessarily a bond hearing. *Id.* at 321. The court relied on decisions often referred to as the Mariel Cuban line of cases, especially the Second Circuit's decision in *Guzman v. Tippy*, 130 F.3d 64 (2d Cir. 1997). *See id.* at 316-20. However, as other courts in this Circuit have noted, *Guzman* was decided before the Supreme Court's decision in *Zadvydas*. *See, e.g., Kouadio*, 352 F. Supp. 3d at 240 n.2. *Clerveaux* specifically references the petitioner's status as an "arriving" alien that had not yet entered the United States to explain why *Zadvydas* did not

alien who was detained after entering the United States, he is entitled to at least as much process as an "arriving alien," as well as the amount of process given to other illegal aliens detained within the United States.

Moreover, Petitioner's prolonged detention further illustrates he suffers from a high risk of erroneous deprivation. In this Circuit, in assessing the risk of an erroneous deprivation of liberty, "courts examine each individual's detention circumstances to determine whether it has become 'unreasonable or unjustified.'" *Cabral v. Decker*, 331 F. Supp. 3d 255, 261 (S.D.N.Y. 2018) (quoting *Demore*, 538 U.S. at 532). The case-by-case approach is an "as-applied, fact-based analysis . . . derived from the Supreme Court's decisions in *Zadvydas* and *Demore*[.]" *Sajous v. Decker*, No. 18-CV-2447 (AJN), 2018 WL 2357266, at *10 (S.D.N.Y. May 23, 2018), *appeal withdrawn*, No. 18-2591, 2019 WL 4137822 (2d Cir. May 7, 2019); *see Joseph*, 2018 WL 6075067, at *10 n.7 (concluding that "[t]he *Mathews* test is consistent with the approach of . . . considering immigration-specific factors for the procedural due process analysis," and the majority of courts in this Circuit seem to have adopted the fact-based inquiry approach). The factors set forth by district courts in this Circuit for a court to consider in determining whether an alien's length of detention has become unreasonable or unjustified, can be summed up as follows:

> (1) the length of time the petitioner has been detained; (2) the party responsible for the delay; (3) whether the petitioner has asserted defenses to removal; (4) whether the detention will exceed the time the petitioner spent

---

impact *Guzman*'s implications for that petitioner. 397 F. Supp. 3d at 320 n.17 ("[T]his Court fails to see how *Zadvydas* undermines the case law's distinction between 'arriving' aliens and those aliens who have 'entered' the United States—legally or illegally."). Accordingly, since Petitioner is not an "arriving alien," the Court does not find the holding in *Clerveaux* to be dispositive here.

in prison for the crime that made him removable; (5) whether the detention facility is meaningfully different from a penal institution for criminal detention; (6) the nature of the crimes committed by the petitioner; and (7) whether the petitioner's detention is near conclusion.[6]

*Cabral*, 331 F. Supp. 3d at 261. Although some of these factors are directed at aliens who have committed crimes in the United States and are detained pursuant to 8 U.S.C. § 1226(c), many of these factors are useful for assessing whether Petitioner's detention demonstrates a high risk of erroneous deprivation.

As to the first factor, Petitioner has been detained in immigration custody since June 2018. (Dkt. 8-1 at ¶ 5). "[C]ourts in this Circuit have generally been skeptical of prolonged detention of removable immigrants, without process, lasting over six months," *Lett*, 346 F. Supp. 3d at 387 (quoting *Lopez v. Sessions*, No. 18 Civ. 4189 (RWS), 2018 WL 2932726, at *14 (S.D.N.Y. June 12, 2018)), and "courts have found detention shorter than a year to be unreasonably prolonged as part of procedural due process analysis," *Rosado Valerio v. Barr*, No. 19-CV-519, 2019 WL 3017412, at *4 (W.D.N.Y. July 10, 2019) (collecting cases). That Petitioner previously had a bond hearing is not dispositive—Petitioner is entitled to a *constitutionally adequate* bond hearing, and, as previously discussed, the procedures at Petitioner's previous bond hearing did not comport with the requirements of due process. Nor can the Court determine from the record before it whether the IJ would have found the Government met its burden to demonstrate Petitioner's risk of flight. *See*

---

[6]      This is not to suggest that other factors cannot be considered by a court in the appropriate case. In other words, it would be inconsistent with the flexible nature of due process, *Jennings*, 138 S. Ct. at 852, to restrict the analysis to hard-and-fast factors with no ability to adapt those factors to the particular facts of a case.

*Brevil v. Jones*, No. 17 CV 1529-LTS-GWG, 2018 WL 5993731, at *5 (S.D.N.Y. Nov. 14, 2018) (finding petitioner "was prejudiced by the incorrect allocation of the burden of proof at his initial bond hearing" because the court could not "discern whether, had the Government had borne the burden of proof (either by a preponderance of the evidence or the higher clear and convincing evidence standard), the immigration judge would have found that the Government had met its burden to demonstrate [the petitioner's] dangerousness or risk of flight"). Thus, "[t]he first and 'most important' . . . factor weighs heavily in favor of granting the petition." *Bermudez Paiz*, 2018 WL 6928794, at *13 (citation omitted).

Respondents contend the second factor in the analysis—which party is responsible for the delay—undercuts a finding of an unreasonable length of detention in Petitioner's case because "Petitioner has been the sole cause of his continued detention." (Dkt. 9 at 21). For procedural due process claims, when "considering whether [Petitioner] or the Government is responsible for the prolonged proceedings, the Court 'may examine the record to determine whether the alien sought repeated or unnecessary continuances, or filed frivolous claims and appeals.'" *Vallejo v. Decker*, No. 18-CV-5649, 2018 WL 3738947, at *4 (S.D.N.Y. Aug. 7, 2018) (quoting *Sopo v. U.S. Att'y Gen.*, 825 F.3d 1199, 1218 (11th Cir. 2016), *vacated on other grounds*, 890 F.3d 952 (11th Cir. 2018)), *appeal withdrawn*, No. 18-2881, 2019 WL 1503029 (2d Cir. Mar. 25, 2019); *see Sajous*, 2018 WL 2357266, at *11 ("[A]liens who are merely gaming the system to delay their removal should not be rewarded with a bond hearing that they would not otherwise get under the statute." (quoting *Chavez-Alvarez v. Warden York Cty. Prison*, 783 F.3d 469, 476 (3d Cir. 2015))). "[C]ourts

should keep in mind that 'aliens should not be punished for pursuing avenues of relief and appeals[,]' but evidence of bad faith delays may cut against them." *Hernandez v. Decker*, No. 18-CV-5026 (ALC), 2018 WL 3579108, at *7 (S.D.N.Y. July 25, 2018) (quotation omitted), *appeal withdrawn*, No. 18-2824, 2019 WL 1377025 (2d Cir. Feb. 5, 2019).

Respondents cite to this Court's decision in *Sigal v. Searls*, No. 1:18-CV-00389 EAW, 2018 WL 5831326, at *6 (W.D.N.Y. Nov. 7, 2018), to support their argument that Petitioner may end his detention at any time. (Dkt. 9 at 19-20). However, *Sigal* is distinguishable from the instant matter. The Court's decision in *Sigal* focused on the petitioner's substantive due process arguments because the forms of relief the petitioner sought in his petition and briefing were for immediate release or for the Court to actually conduct a bond hearing. (*See* Petition, *Sigal v. Searls*, No. 1:18-cv-00389-EAW, Dkt. 1 at ¶ 37 (W.D.N.Y. Mar. 28, 2018) (alleging in petition that "Petitioner is therefore entitled to immediate release on his own recognizance or under bond, by order of this court")); *see also Doherty*, 943 F.2d at 209 ("[The petitioner] does not argue that the process under which he was denied bail was unfair or inadequate, but rather, that the very fact that he has been subjected to prolonged detention without bail violates his substantive right to liberty.").

Moreover, the facts in *Sigal* are easily distinguishable from this case. The *Sigal* petitioner had been ordered removed by an IJ before ever being taken into DHS custody, and the BIA affirmed the IJ's decision within about a week after the *Sigal* petitioner was taken into DHS custody. 2018 WL 5831326, at *2. As a result, the entire length of the *Sigal* petitioner's custody in DHS was directly related to his pursuit of an appeal before the

Second Circuit with a corresponding stay of removal. As this Court noted in *Sigal*, while a petitioner should not be punished for seeking review of administrative or judicial decisions, "that right does not mean it may be exercised without consequence," *id.* at *6 (citation and quotation omitted), and in fact, the *Sigal* petitioner's removal would not have prevented his pursuit of relief before the Second Circuit, *id.* at *6 n.5. Thus, the Court in *Sigal* was persuaded that the petitioner's litigation strategy was largely responsible for the length of his detention. In fact, shortly after this Court issued its decision in *Sigal*, the petitioner discontinued his appeal before the Second Circuit, *see Sigal v. Whitaker*, No. 17-2197, Dkt. 92, thus further confirming the Court's opinion concerning the petitioner's litigation strategy. Here, the Court is not similarly persuaded that Petitioner is engaging in a litigation strategy meant to prolong his immigration proceedings. The record does not show that the continuances requested by Petitioner and his attorney were unnecessary or made in bad faith; to the contrary, they were made to help prepare for the various hearings before the IJ, and at least one continuance was made "for an unknown reason" not attributed to either Petitioner or Respondents. (Dkt. 8-1 at ¶¶ 10-23). As such, it would not be appropriate to utilize these requests for adjournment to penalize Petitioner. *See, e.g., Sopo*, 825 F.3d at 1218; *Vallejo*, 2018 WL 3738947, at *4; *Hernandez*, 2018 WL 3579108, at *7; *Sajous*, 2018 WL 2357266, at *11.

As for the third factor, Petitioner has asserted defenses to removal in the immigration proceedings—he has applied for asylum. (Dkt. 8-1 at ¶ 19). "The Court need not inquire into the strength of [Petitioner's] defenses—it is sufficient to note their existence and the resulting possibility that the Petitioner will ultimately not be removed,

which diminishes the ultimate purpose of detaining the Petitioner pending a final determination as to whether he is removable." *Sajous*, 2018 WL 2357266, at *11; *see Cabral*, 331 F. Supp. 3d at 261-62 (finding the third factor weighed in petitioner's favor because he asserted several defenses to his removal); *Perez*, 2018 WL 3991497, at *5 ("Petitioner has made a claim for asylum that could be a defense to his removal, again tilting the scales toward his unreviewed detention being unreasonable."). Accordingly, this factor weighs in Petitioner's favor.

The fourth factor—whether the detention facility is meaningfully different from a penal institution for criminal detention—is at best neutral. Respondents have submitted a declaration describing the conditions of confinement at the Buffalo Federal Detention Facility as not consisting of "the same level of restrictions typical for someone held at a prison." (Dkt. 8-3 at ¶ 7). However, even with the amenities, such as entertainment, a microwave, and a juice bar, detailed in that declaration (*id.* at ¶¶ 7-8), the reality is that the facility houses aliens against their will with various restrictions on their freedom of movement. Thus, while perhaps not akin to a maximum-security prison, for many aliens, even crediting the description set forth in the declaration, the facility does not seem meaningfully different from at least a low-security penal institution for criminal detention.

The final relevant factor, whether the petitioner's detention is near conclusion, weighs in Petitioner's favor. The briefing regarding the petition for review in the Second Circuit has not yet begun, and it is consequently unclear when the Second Circuit will issue its decision, or whether that decision will result in Petitioner's release or further proceedings. *See Dukuray v. Decker*, No. 18 CV 2898 (VB), 2018 WL 5292130, at *5

(S.D.N.Y. Oct. 25, 2018) ("[T]here is 'significant reason to believe that [petitioner's detention] will continue . . . because . . . he would remain detained throughout the course of an appeal by either side.'" (second alteration in original) (quoting *Lett*, 346 F. Supp. 3d at 387)).

The Court finds that most of the factors favor Petitioner. On balance and particularly in view of the length of the detention and the circumstances surrounding that detention, the Court finds that Petitioner's prolonged detention with the process that has been given to him demonstrates that his risk of erroneous deprivation is high.

Taking all of the above into consideration and weighing the *Mathews* factors accordingly, the Court finds "the 'minimal burden' that a bond hearing would place on the Government is far outweighed by [Petitioner]'s interest in 'ensur[ing] that his continued detention is justified,'" *Arce-Ipanaque v. Decker*, No. 19-CV-1076 (JMF), 2019 WL 2136727, at *2 (S.D.N.Y. May 15, 2019) (quoting *Vallejo*, 2018 WL 3738947, at *5), and due process requires that Petitioner receive a bond hearing where the government must demonstrate dangerousness or flight risk by clear and convincing evidence. Additionally, the Court finds that both due process and BIA precedent require the IJ to consider ability to pay and alternative conditions of release in setting bond. *See Abdi v. Nielsen*, 287 F. Supp. 3d 327, 335-39 (W.D.N.Y. 2018); *see also Hernandez v. Sessions*, 872 F.3d 976, 991 & n.4 (9th Cir. 2017) ("A bond determination that does not include consideration of financial circumstances and alternative release conditions is unlikely to result in a bond amount that is reasonably related to the government's legitimate interests."); *Arce-Ipanaque*, 2019 WL 2136727, at *3 (collecting cases); *Lett*, 346 F. Supp. 3d at 389 ("The

Court agrees with Petitioner that an immigration bond hearing that fails to consider ability to pay or alternative conditions of release is constitutionally inadequate."); *Hernandez*, 2018 WL 3579108, at *12 ("[T]he Due Process Clause requires than an IJ consider ability to pay and alternative conditions of release in setting bond." (quotation and alteration omitted)).

## CONCLUSION

For the foregoing reasons, the Petition (Dkt. 1) is granted solely to the extent that the Court orders Respondents to afford Petitioner an individualized bond hearing consistent with the procedures outlined in this Decision and Order within 14 days of its entry. If Petitioner requests a continuance that results in a bond hearing date outside the 14-day deadline set forth above, such a continuance will be in compliance with the instant Decision and Order, as long as the new date falls within a reasonable time period. Respondents are directed to file a status update with the Court within three (3) days of the date of Petitioner's bond hearing regarding the outcome of the hearing, or on or before March 20, 2020, whichever date is earlier. The Clerk of Court is instructed to close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated: February 28, 2020
          Rochester, New York